Mr. Kelman. Good morning, Your Honor. Yes. Alan Kelman appearing on behalf of the appellant claimants. May it please the court. First let me indicate I would like to reserve three This is an order of converting the case from a Chapter 11 to a Chapter 7 and I don't think that finality is actually at issue. I sort of took it that you were asking. I'll counsel Okay, very good. The question never goes away. Thank you, Your Honor. Right. I remember it very distinctly. It was a two-to-one decision on that one. Following this court's decision in 2008, Judge Fischer, which I know obviously that you remember very well because you wrote it, the court determined that the filing of the bankruptcy was in good faith and that there was no litigation advantage to be obtained. We returned to the bankruptcy court in anticipation of and pursuant to notice to have a hearing with respect to the adequacy of the disclosure statement. At that time, Judge McCullough presented four questions having to do with the surcharge, collusion, vitiation of coverage, and the authority of the bankruptcy court to participate in the claims process, which was part of the debtor's proposed plan at that point. Following briefing on these four questions, the judge converted the case, which I would have to note as a sidebar that I think it was Travelers earlier on in the case opposed conversion, which had been proposed by one of the unsecured creditors. The problem with this ruling was that in effect what the court did was rule on the declaratory judgment, the adversary proceeding which the carriers had The adversary proceeding had been stayed since 2008. There had been no discovery, there was no evidence presented, there was no hearing, there was no testimony. And in effect what the court said was is that regardless of any of the facts and circumstances in this case, there can never be a I would note also as an aside... Is there any case out there that says that you can't dismiss the plan on a confirmation hearing? Well, I understand that during the course of the disclosures, during the course of a hearing on a disclosure statement that it is possible that a case can be dismissed. But this whole matter turned on... I'm sorry? But he did so essentially because of his decision that there can never be a plan that sets up a test distribution procedure that involves the carriers. He said there can never be a settlement between the debtor and the claimants. One thing that strikes me in this case, which has some complexity to it, but on the other hand is relatively simple, is you don't cite any other case where there's been a plan like this approved by any carrier. Because there has never been a case which actually got converted. I mean there are cases where trust distribution procedures, it's routine, especially in this circuit. The issue here is whether or not the plan is confirmable because there's alleged collusion, alleged agreement, whatever, signed by whoever it was, between the debtor and his best friend's claimants. And you did not cite any other bankruptcy where this has taken place in the world? It clearly is a unique circumstance. No, it doesn't tell me that at all, Your Honor. In fact, if I can go back to your decision, I mean you pointed out, as we had argued, that the surcharge, which is not an illegal assignment, which I'll come back to in a second, but you pointed out that the surcharge actually serves the purpose of the bankruptcy because it helps to... In the third plan, yes, that was a 524G trust, but that doesn't... ends up being put into a 524G trust. But we can, in effect, accomplish the same thing here. I mean before there was 524G, plans were being approved by bankruptcy courts which contained trust distribution procedures. It is still something that we can do here. But weren't those situations where there was a lot more information on the potential claimants? Now here there has never been an asbestos claimant who has succeeded against any of the insurance companies. Isn't that correct? No, in this case, with respect to Skinner Engine, that is correct, yes. But not with respect to other defendants, not with respect to trials. But aren't we concerned now with Skinner, who is now American Capital, and claims against it? And there has never been a claim that succeeded. And from looking at the record, I have... I can get no idea of the validity of any of the claims that are being made because there is really no information about them. In 1991, when the MDL asbestos panel was... Right. And those were dismissed then in 96 by Judge Weiner with the instruction that if any of these claims develop to the point of asserting liability, that the claimants can do so. Have any of them ever done that? We have had as many trials as any other plaintiff's firm in the country. Have any of the claimants against Skinner Engineering ever done that? No, not against Skinner Engineering. I mean, doesn't that make the insurance companies a little leery about the validity of any of these claims out there? We are not suggesting that any claims which cannot pass muster be paid. A trust distribution procedure has certain criteria. They have medical criteria. A mesothelioma claim is a mesothelioma claim. Well, there's a question, too, of the responsible defendant. Of course. And that is contained in the trust distribution procedures. And if Skinner Engine had products aboard a vessel and these products contained asbestos or they are somehow responsible for asbestos, then they should pay their fair share. But if the victim came forward not only in Skinner's case, the claimant is not concerned with the firm and the fact that the case was closed in the first place, would they not have resources to seek recovery through the insurance company? Would the insurance company be able to write an insurance report in the MDL process? In the MDL process? At this point, it's possible. Yeah. And wouldn't they get a better recovery? They wouldn't have to pay the 20% surcharge. The problem we have is that our office, there's an entire industry here. There's an entire industry of merchant mariners from the claimant's side. And we have 100 mesothelioma claims and we have 1,500 lung cancer claims and we have 800 other asbestos-related claims. Okay? The fact of the matter is that one mechanism that has worked for the last 20 years in moving claims is through the bankruptcy court and through trust distribution procedures. But Skinner did not go into bankruptcy because of the asbestos claims against him, did it? No. Those cases have involved companies that were being pulled under because of the asbestos claims. That's true. We did not cause Skinner to go into the bankruptcy. We did not advocate on behalf of MDL. We had hundreds and hundreds of cases set for trial in 1991, which were then put on hold. And we have held there. Mr. Kelman, you deserve three minutes to rebuttal. We'll have you back on that after you've heard from Dennis Seifert. We'll hear then from Mr. Horkovich on the three minutes on insurance policy. Thank you, Your Honor. Bob Horkovich for the Debtor Appellant, American Capital Equipment, and Skinner Engine. Let me jump into the fray and see if I can answer some of the questions that were already posed. We received some records under confidentiality, which we filed under seal, which reflect defense counsel for Skinner, acknowledging that co-defendants in suits that had been brought had settled claims for mesothelioma for multimillion-dollar verdicts. So Skinner's defense counsel, defending Skinner, was recognizing his co-defendants in the same case going down and having paid multimillion-dollar settlements and wrote to Skinner about Skinner's potential liability. True, absolutely true, that the court said, is that there was no lawsuit which was successfully completed, but largely because that's the administrative stay in the MDL. The central problem here is that there's no record. And there's no record because we didn't have a chance to develop a record. It was stayed, and when we got back, the court simply converted without any record. And we'll get back to that in just a second. As to the reasonableness of the settlements, the insurance companies always could challenge the reasonableness of the settlements. And that's our view, is that the insurance companies could come in and challenge the reasonableness of it. They could challenge it tomorrow, they could challenge it the next day. We were denied that chance. Can you say they could challenge the reasonableness of the settlements? You're talking about being able to challenge the CADB process? Yes, yes. But the challenge is this form of baseball arbitration system. It's a bad system. Most people say that's the worst system around. We've tried to work with the defendants as best we could in coming up with something that would be as reasonable as possible to work on, other than just denying our claims, and have not been successful. That's the best we could come up with. We would be perfectly fine to come up with any other system in working with the defendants. Can a bankruptcy judge really perform the functions that are required under the CAPD? We recommended that as a suggestion because the judge at one point said, there's no judicial review here. There's no judicial involvement. So we said, if you want judicial involvement, you've got it, but you can elect not to have it. But can the bankruptcy judge do it? I don't think he can. He chose not to, in any event. Well, I think under the jurisdiction of the bankruptcy judges, I don't think that they can make such a factual determination in the course of litigation for the settlement of litigation. We were flexible on the plan, and we've articulated to the court repeatedly. We were flexible on the plan. You suggested the district court as an alternative to make the determination. We're looking for some way of satisfying the concerns that these settlements are collusive and unreasonable, and we're trying anything we could to get that done. And we regularly suggested alternative plans, and this is the one that rejected. I see my red lights on, but we believe that the district court and the bankruptcy court erred in holding that we breached our insurance policies where they never considered any facts, heard any evidence, never heard one witness. The court made a determination that we breached our insurance policies without any facts or hearings, and that they held that our plan was proposed in bad faith and collusive without hearing a witness or a single evidence. We believe that that's error. We believe that he did not follow Pennsylvania law. We believe that reasonable settlements can be accomplished without the insurance company's consent, and we believe that this court has recognized that the courts around the country have so held in the Aston Johnson case. We believe that the courts did not, and we brought that to the judge's attention, and they didn't, when the judge, when we came back from this court, from your decision, Judge Fitcher, Judge McCullough, in simply dismissing the case, never acknowledged what you said in your decision when we came back, and again, when we brought the Third Circuit's opinion in Aston Johnson and the fact that we could enter into reasonable settlements without the consent of the insurance companies, he simply ignored the Third Circuit's ruling there. I read something. How does Skinner or American Capital Harmony stand on this? Well, that's a great question. Why do this? Why should Skinner Engine do this? The insurance companies say, why don't you just walk away, close the books, and walk away. We believe that we have an obligation to maximize our recovery for creditors. We believe that's our obligation under the bankruptcy law. Creditors should be made whole as best as possible. We have an obligation to maximize our recovery. That's what we try to do. Thank you. Thank you very much for indulging, Mike. Thank you, sir. You can now handle the insurance coverage questions. Ms. Spinelli. May it please the Court. Danielle Spinelli for Hartford. The bankruptcy court's judgment should be affirmed for at least three independent reasons. The court didn't clearly err in showing that Skinner couldn't meet its burden of showing that its plan was feasible. It didn't abuse its discretion in concluding that the plan wasn't proposed in good faith, meaning that it was fundamentally fair to all parties in interest. And it correctly held that the provisions for resolving asbestos claims violate the bankruptcy code. And after nearly ten years and five unsuccessful plans, the court in no way abused its broad discretion in converting the case to Chapter 7. That won't prevent claimants with valid claims from recovering, and it won't confer a windfall on insurers. All right. The question we had to decide here, and the question the bankruptcy court had to decide, was that the plan was unconfirmed. Correct? That's correct. That's the best one. That's the basic question. That's correct. All right. And, you know, in the record, and before the district court, and your briefs, both side briefs, the term pollution gets thrown around. Let me speak to that. Why is the plan collusive? I don't see any agreement between anybody that constitutes pollution. Let me speak to that, Judge Fischer. I mean, collusive is an emotive term. I think that the bankruptcy court made clear that it was using that, essentially, to denote the conflict of interest that's inherent in a settlement, which is entered into with a tort victim by a defendant on the condition that the victim give back part of the insurance recoveries. I don't see the settlement with the tort victim. All there is here is a proposal that the asbestos claims will be processed, and anybody who's successful, and it might be none of the 28 doctors, or it might be 100 of the 28 doctors, will pay a 20% surcharge. They choose to go through that process. The CADP itself is a settlement, and, in fact, the plan says that. It is a plan that sets out the criteria and the procedures under which individual claimants will be able to recover, and as such, it's an agreement between the debtor and the claimants as to the way in which these claims will proceed outside the tort system. I understand your position, but I'm trying to get to the point of collusion and agreement between the parties. It only becomes a procedure if it's approved by the bankruptcy court as part of the plan. Correct, and I think the question is, is that a procedure that is confirmable? All right, but it might not be. Well, I guess my point to you is it may not be a plan that's confirmable, but I don't see why it's a plan that's collusive. Well, I don't think we need to use the term collusive. I think the question that the bankruptcy court— That's been here with you all the problems. It's been used an awful lot. You're absolutely right, and I don't think it's necessary, and I should say good faith is also a term that's been used. Good faith is actually an objective inquiry. There's no need to make any finding that anyone acted with bad intent in order to determine the confirmability of this plan. The bankruptcy court looked at this and decided for at least three independent reasons that the plan wasn't confirmable. First, the bankruptcy court found that Skinner hadn't met its burden of showing that the plan was feasible, and that's so because in order for this plan to work, Skinner would have to succeed in forcing the insurers to indemnify this settlement. Well, are you saying that this happened in the adversary proceeding? No, I don't believe so. I don't think it was necessary to resolve the adversary proceeding, and I don't believe the bankruptcy court intended actually to resolve the insurance coverage questions, but what it had to do under Section 1129 of the bankruptcy code was make a determination whether the plan was feasible. In this case, for the plan to be feasible, this is very unusual, but in this case for the plan to be feasible, the debtor would have to be able to recover insurance funds because that was the only way it could pay any of its administrative claims of which it now owes millions of dollars, let alone pay any of the asbestos claimants. So the court was required to look at that to make a predictive judgment as to whether Skinner had demonstrated a likelihood of success in showing that it would be able to get the insurers to indemnify this settlement, and the court said the insurance policies, as no one disputes, require that the insurer consent to a settlement by the insured. Now there may be circumstances in which courts won't enforce that type of provision because there are situations in which it can put the insured's interests at risk. In all of these, there are a lot of what ifs down the line. The first what if is some asbestos claimant has to recover under this truncated process, and then the insurance company who has recovered has to agree that they're responsible and they have to agree to indemnify. And I think that's the exact point. The bankruptcy court found that this was just too speculative to work and that the likelihood of Skinner actually... It could, but Skinner had the burden of showing a likelihood that it would. And under these circumstances, the likelihood that a court would not enforce the consent to settlement clause, I believe is nil, because that happens when the insured's assets are somehow put at risk. Here, Skinner has no assets to be put at risk. Moreover, the settlement is set up in such a way that the more liability Skinner has, the more its lawyers get paid. So there's an inherent conflict of interest in this plan. That's just feasibility. Is that feasibility or good faith? That's feasibility. That same flaw in the plan also makes it not in good faith. And the bankruptcy court also held that as an independent basis, meaning essentially that it's not fundamentally fair to all parties in interest. I thought the bankruptcy court had held that the insurer's refusal to agree to this arrangement, to this plan, to this case, was not unreasonable, and therefore that this was a settlement that they needed to consent to or their refusal to consent had to be unreasonable. Did I misread that? No, no, you didn't. I think Judge Vanaski, that's exactly right. The bankruptcy court said... Why shouldn't there be a hearing on the question of whether the insurance company's refusal to agree to this arrangement is unreasonable? I think there doesn't need to be a hearing on that because that's a question that can be resolved as a matter of law simply by looking at the settlement itself and at the fact that Skinner essentially has no skin in the game. The only risk right now belongs to the insurers. Under those circumstances and in a situation in which the settlement has an inherent conflict of interest where the debtor's lawyers get paid only if the debtor is found to be liable, Skinner could not show that it had a likelihood of showing that our failure to consent was reasonable. And then I think the last... I see my time has expired. One problem that I'm having is perhaps the other way around. There just isn't any record. There's a lot of argument, and there's a long history of this case. There absolutely is. But there just isn't any record on this plan for us to determine whether everything that you're arguing about is or isn't true. I can't find anything that says you're required to have a hearing. I can't find anything that says that you can dismiss the argument. I understand, Judge Fischer. I believe that under these circumstances, an evidentiary hearing is not necessary because the bankruptcy court's determination didn't turn on any disputed fact. It turned primarily on the provisions of the plan itself, the nature of the settlement embodied in the plan, and the provisions of the CADP, which violated the bankruptcy code. I apologize. I don't believe there's any evidence they could present that would change the bankruptcy court's conclusion. This is a situation in which the settlement embodied in the plan is not one that insurers could be required to indemnify. Under those circumstances, the plan can't be feasible. And the CADP says what it says. And the provisions of the CADP accord the bankruptcy court a role that's improper and violate the bankruptcy code's jurisdictional and procedural provisions. Thank you. May it please the Court, Andrew Amer on behalf of Travelers. Your Honor, there clearly is a sufficient record here. The record is the insurance policies and the terms of the plan and the CADP. And the Court need not look at anything beyond the policies and the plan and the CADP. I think that Mr. Kellman's client argues that the insurance policies are a part of it. They are, Your Honor. They are in the record at the Joint Appendix 330 to 334. They were lodged with the Court. Are they affidavits? Well, it's an affidavit that doesn't include the policies, but they were filed with the Court. But are the policies part of the record? The policies are part of the record. They were submitted to the Court under the Court's rules because they were too lengthy. They were not actually included with the filing, but they were available. They were sent to the parties. They certainly have them. So there's no issue that the policies were before the Court, Your Honor. The Court clearly correctly held that this plan is patently unconfirmable on its face because it breaches the insurance company's rights. And because it does that, it violates 1129A3, and it renders the plan infeasible under 1129A11 because here insurance is the only asset for this plan. And Judge Fischer, you are exactly right that this plan is unlike no other plan that we've seen in other cases. And the facts of this case are also unique for a number of other reasons. Number one, there's no other funding for this plan other than insurance. If you look at all of the other asbestos bankruptcy cases that are cited, there is substantial funding coming in from other sources other than insurance. And indeed, in exchange for that funding, the parties get the benefit of a channeling injunction under 524G. This is not a 524G plan. The three critical rights that are violated or breached are the insurer's right to defend the claims, tendered, the insurer's right to control settlement, and the insurer's right to get the cooperation of the insured in defending and settling the claims. Why does the plan breach any of those three rights? Because under the CADP, and in particular Section B2A, the plan vests with the trustee the exclusive right to evaluate claims so the insurers are not allowed to participate in the defense of the claims or the valuation of the claims. But you get to defend the claims under the CADP. Absolutely not, Your Honor. Under the CADP, under that Section B2A, the insurers, although they can elect to have a court determination, it's a meaningless exercise. They can't take in a discovery. They can't introduce any evidence. It bears no relationship to the process of defending a claim in the tort system under the federal rules of civil procedure, which is what would apply if the insurers were defending these cases in the MDL proceeding. And I might add, and this is a very important point, pre-petition the insurers were defending these claims and were exercising the rights that I've just enumerated. And they were doing so successfully because, as Judge Roth pointed out, pre-petition neither Skinner nor the insurers had ever paid a dollar for asbestos liability. And that is yet another reason why this case is so unique. So the insurers were exercising these rights pre-petition, and they are clearly being stripped of these rights post-confirmation under this plan. I might add that this case is analogous to the en banc decision this court recently issued in the JIT case because the silica claims, like the asbestos claims here, had no historic liability. There had been no payments for asbestos here, just as there had been little or no payments for silica claims. And as the majority en banc decision held in JIT, the silica trust, like the CADP here, materially altered the quantum of liability facing the insurers. And that is absolutely true with the CADP because the CADP creates a process that enables the asbestos claimants to obtain compensation through a procedure that bears no resemblance to the tort system. If you were to affirm the bankruptcy court's decision, would asbestos victims who assert a claim against Skinner have the ability to sue those claims and demonstrate their deep cover through the insurance company? Absolutely, Your Honor. And I want to make the point that the assertion in the other side's briefs that affirming will create a windfall for the insurers is absolutely not true. The insurers will defend these claims in the tort system. They had done that pre-petition. They will do that through the Chapter 7 proceeding. And, in fact, the insurers intend to work with the Chapter 7 trustee to ensure that there is an agent for receipt of service of process and that these claims be allowed to go forward as they should in the MDL proceeding in the tort system. And through that process, the insurers will be able to exercise their rights under the contracts, the insurance policies, to control the defense and settlement of claims. I would also point out that in our opposition brief, we mentioned future claims. Future claims are covered by this plan. A future claimant who has never tendered a claim to these insurers can opt into the CADP. And we noted in our opposition brief that as to future claims, surely the insurers haven't done anything that could even arguably forfeit their rights under the policies to control defense and settlement. And that point has never been addressed in the reply brief. There's never been any mention of why it is insurers shouldn't be allowed to enforce their policy rights against future claims, claims that are going to be allowed to opt into the CADP under the plan. Finally, even Skinner acknowledges that the CADP can't be binding on insurers unless it's a reasonable settlement and one made in good faith. And I think the bankruptcy court and the district court, as an independent basis, found that the CADP simply is not a reasonable settlement. And it's for all the reasons the court acknowledged already, the surcharge, the co-opting of a bankruptcy court judge as an arbitrator in a baseball arbitration, and just preventing the insurers from exercising the right to defend as they would have in the MDL. I see my red light is on. Thank you very much. Thank you, Your Honor. There are, needless to say, a number of points to go over here. Let me try to go through them very quickly. First of all, the JIT case essentially had to do with standing, which is not an issue in this case, and it's certainly not one that is before the court. Secondly, with regard to values with respect to Skinner, there are documents under seal, which I haven't even seen, that have to do with an exchange of information between Skinner and an insurance counsel, and I would ask the court to take a look at that. With respect to the record, it's my understanding that the only policies that are actually in the record came from travelers, and there are multiple carriers that are involved here, and those policies came into the record as part of a motion to withdraw the reference. Whether or not the bankruptcy court ever looked at that, I don't know, but there are six or seven or eight different... Is there any indication in the record that the bankruptcy court ever looked at those policies? There is not. With regard to going back to Judge Wiener's order, I would simply note that that order was issued in 1996. There was a subsequent order that said that all of these claimants are allowed. There was an administrative dismissal. The terms of reinstatement were changed, but in any event, he very clearly states, and I think that it's in your earlier decision, Judge Fischer, where he notes that all of these claimants are entitled to participate in all the bankruptcy proceedings just as everybody else is across the country, and that if you take... Keep in mind here that the carriers are reserving their rights under the policies. So let's say I go out and try a mesothelioma case, and I have a client who served on a number of different vessels, which triggered a number of different policies. Then I'm going to go fight over coverage. If we want to do this efficiently, the way that we can do it here is to proceed with this declaratory judgment action with a complete record and determine whether or not these protocol or a protocol is reasonable or in good faith, and then go from there. I'm not asking anybody to pay any claim which is not a legitimate claim, which doesn't have exposure to skin or products and can't be proven up, medically speaking. We have been doing that for 20 years. No Judge Wiener's order in 1996, which is 15 years old, says what it said. But that was then, and this is now. Thank you. Thank you. We thank all counsel. In case it was a trivial argument and you don't agree, then we'll take a five-minute recess. We'll also take a five-minute recess.